**DAVID J. HOLDSWORTH** (4052)
9125 South Monroe Plaza Way, Suite C
Sandy, UT  84070
Telephone (801) 352-7701
Facsimile (801) 567-9960
david_holdsworth@hotmail.com
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | | |
|---|---|---|
| ALLISON P. MATTHEWS, | : | **COMPLAINT** |
| | : | **(JURY TRIAL DEMANDED)** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| AMERICAN FORK POLICE | : | |
| DEPARTMENT, | : | Civil No. 2:26-cv-00359 |
| | : | |
| Defendant. | : | Hon. |

COMES NOW the Plaintiff, Allison P. Matthews, complains of

Defendant American Fork Police Department, demands trial by jury and, as and for

facts and causes of action, alleges as follows:

**PARTIES**

1.     Allison P. Matthews is a citizen of the United States and, at all

times relevant hereto, was a resident of the State of Utah.

2.     The entity Plaintiff names as Defendant herein is the American

Fork Police Department, which is an "employer" within the meaning of Title VII, and

at all times relevant hereto, American Fork Police Department (hereinafter "Defendant"), was a part of a governmental entity which was doing business in Utah and which employed 15 or more employees, including Plaintiff.

## SUBJECT MATTER JURISDICTION

3.    This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, for discrimination in employment and for retaliation.  Jurisdiction is specifically conferred on this Court by 42 U.S.C. § 2000 e (5).  Title VII of the Civil Rights Act of 1964, as amended, which provides that it is unlawful for an employer to: discriminate against an employee in her employment on the basis of her sex and to retaliate against an employee for engaging in protected activity.  Equitable and other relief are also sought under 42 U.S.C. § 2000 e (5) (g).  Jurisdiction is also based on 28 U.S.C. §§ 1331, 1332 and 42 U.S.C. § 1981, et. seq.

4.    Venue is properly laid in the Federal District of Utah because the events, actions and decisions alleged to give rise to claims of liability occurred in the Federal District of Utah.

## EXHAUSTION OF ADMINISTRATIVE PROCESSES AND REMEDIES

5.    On February 28, 2024, Plaintiff filed a Charge of Discrimination with the Utah Labor Commission's Antidiscrimination Labor Division ("UALD") in

2

which she alleged that Defendant had discriminated against her based on her sex and had retaliated against her for engaging in protected activity.

6.      Plaintiff filed her Charge of Discrimination within 300 days from the last date of the alleged harm.  Plaintiff alleges the Court may exercise jurisdiction over all non-discrete discriminatory actions constituting a continuing violation beginning before May 4, 2023, the date which is 300 days before Plaintiff filed her Charge of Discrimination, and which discrimination continued past May 4, 2023, and over all discrete discriminatory actions occurring on or after May 4, 2023.  The Court may treat all alleged discrete discriminatory actions occurring before this date as being untimely for purposes of relief, but may give weight to evidence of such for evidentiary purposes.  Plaintiff alleges all jurisdictional requirements have been met as required by Title VII of the Civil Rights Act of 1964, as amended.

## STATEMENT OF FACTS

7.      Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 7 above as if alleged in full herein.

8.      On November 1, 2022, Defendant hired Plaintiff to work as part-time records clerk.  In July 2023, the Defendant transitioned Plaintiff to working on a full-time basis.

9.     During her employment with Defendant, Plaintiff interfaced with several managers and supervisors, including Aaron Brems ("Brems"), American Fork Fire Chief; Cameron Paul ("Chief Paul"), American Fork Chief of Police, her ultimate supervisor; David Bunker ("Bunker"), City Administrator; Bev Davis ("Davis"), her immediate supervisor; and Jodi Frost White ("White), Information Specialist.

10.    Plaintiff alleges that she is a female.

11.    Plaintiff alleges she was a qualified individual in that she had the education, skill set and work experience to perform the essential functions of her job and was performing the duties of her job in a fully successful manner.

12.    Plaintiff alleges that, beginning around the end of July 2023, she dated and had a mutually consensual, romantic and intimate relationship with Brems.

13.    Plaintiff alleges that, at that time, she informed Chief Paul about the relationship with Brems.

14.    Plaintiff alleges that, while she was dating Brems, she told Brems that she did not agree with Chief Paul's decision to demote an employee.  She alleges that Brems was the only person with whom she discussed her feelings about this demotion.  She alleges Brems told her that she did not know what was going on and to let Chief Paul's decision on the demotion stand.  Thereafter, Plaintiff did not voice her disagreement with the demotion at issue to Brems again, or to anyone else.

15.    Plaintiff alleges that, on October 25, 2023, the relationship between Plaintiff and Brems ended.

16.    Plaintiff alleges that, on December 11, 2023, she noticed an "odd tension" when she arrived at work, in that none of her coworkers were speaking to her. She alleges she sent a text to her coworkers saying she was concerned with the tension in the office. She alleges that coworker White then sat up in her chair and started yelling at her. Plaintiff alleges that White accused her of telling another worker that "because I [White] am the mayor's wife[,] I sit on my ass and don't do anything". Plaintiff alleges that she never said such a comment to anyone and denied that she had said such a comment to anyone. She alleges that, while White was yelling at her, Chief Paul came into her work area where White had been yelling at Plaintiff and Chief Paul asked Plaintiff (but not White) to come into his office with her supervisor, Davis, and that she did so. Plaintiff alleges that, when she tried to explain what had just gone on and asked if she was being fired, Chief Paul told her:

> "I'm not discussing that with you.  I will tell you tomorrow.  Get your stuff, get out of the building.  I will tell you tomorrow."

17.    Plaintiff alleges that Chief Paul said he knew what she had said about him with regards to an employee he had demoted, and then he said, "I've already lost trust in you". (Plaintiff alleges that Chief Paul could have learned about her

5

disagreement with the demotion only from Brems.)  Plaintiff alleges that Chief Paul then told her to get her belongings and that Davis would escort her out of the building. She alleges Chief Paul told her she would be paid for the full day.  She alleges Chief Paul and Davis followed her to her desk where she gathered her belongings, then Davbis escorted her to the back door, threw or placed a bag containing some of her belongings outside of the back door, and pulled the back door shut.

18.    She alleges that, by these actions, she was being told that, without those exact words, that she was being fired.

19.    On information and belief, Plaintiff alleges that White, who was the one yelling at her, was not counseled or disciplined.

20.    Plaintiff alleges that, soon after being escorted out of the building, she did send a text to her supervisor about how the events which had just occurred had caused her to be concerned about whether she still had a job, but she alleges she never resigned.

21.    Nevertheless, Plaintiff alleges a City decision maker [Davis] texted her:

> "[I]n talking with [Paul] and [Bunker], we are going to go ahead and accept your resignation as you texted me. We have so appreciated all your hard work."

22.    Plaintiff specifically alleges she did not intend to resign and that she did not resign.

23.    Plaintiff alleges that Defendant took this action against her because she is female and because she engaged in protected activity.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**DEFENDANT SUBJECTED PLAINTIFF TO DISCRIMINATION**

24.    Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 23 above as if alleged in full herein.

25.    To state a prima facie case of discrimination based on sex, Plaintiff alleges facts which establish, or tend to establish, that: (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) Defendant took adverse employment action against her; and (4) the circumstances surrounding the adverse actions give rise to an inference of discrimination — namely, that Defendant took adverse action against her because of her protected class. *See, generally, McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).

26.    Plaintiff's allegations, as set forth above, satisfy the first and second elements of her prima facie case of discrimination.

27.    To satisfy the third element of her prima facie case, Plaintiff alleges that Defendant took adverse employment action against her.  An adverse

employment action includes "some injury respecting ... employment terms or conditions". *Muldrow v. City of St. Louis,* 144 S.Ct. 967, 977 (2024).  The injury respecting Plaintiff's employment terms or conditions must have left Petition are worse off, but need not have left her significantly so. *Id.*  The terms and conditions of employment "covers more than the ' economic or tangible'". *Id.*  A Plaintiff must only show that they were treated worse because of their protected class. *Id.* at 974.

28.     Plaintiff alleges that Defendant subjected her to the following adverse actions: (1) on December 11, 2023, when Defendant did not allow her to explain what had just taken place in the office and sent her home for the rest of the day; and (2) on December 11, 2023, when Defendant terminated her employment or constructively discharged her for deeming a text she had sent to be a letter of resignation, which she never intended it to be.

29.     As to (1), Plaintiff alleges that being sent home publicly for the rest of the day, even with pay, is an adverse action, particularly when several of her coworkers were present during of such action.

30.     As such, Plaintiff's allegations as to this incident satisfy the third element of her prima facie case of discrimination.

31.     As to (2), Plaintiff alleges that being terminated or constructively discharged is an adverse action.

32. Plaintiff alleges that the way she was being treated on December 11, 2023 led her to believe that she was being discharged in that Defendant either terminated her employment or constructively discharged her.

33. As such, Plaintiff's allegations as to the incident on December 11, 2023, satisfy the third element of her prima facie case of discrimination.

34. To satisfy the fourth element of her prima facie case, Plaintiff alleges that the circumstances of December 11, 2023, including disparate treatment, which, but for the employee's protected trait, would be different, give rise to an inference of discrimination. *See International Union v. Johnson Controls, Inc.,* 499 U.S. 187, 200 (1991).

35. Plaintiff alleges that Chief Paul sent her home on December 11, 2023 because of her sex in that he decided she was too emotional to have a meaningful conversation.

36. Plaintiff alleges that Chief Paul and/or Davis treated Plaintiff's text message as to a notice of resignation because of her sex, in that she neither intended to resign or resigned, but Defendant deemed her emotional state to be tantamount to a resignation.

37. As such, Plaintiff's evidence supports an inference that Defendant did whatever it did regarding Plaintiff's employment due to her sex.

38.     Thus, Plaintiff alleges that Defendant subjected her to adverse actions because of her sex.

39.     As such, Plaintiff's allegations satisfy the fourth element of her prima facie case of discrimination.

## SECOND CAUSE OF ACTION
## DEFENDANT RETALIATED AGAINST PLAINTIFF

40.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 39 above as if alleged in full herein.

41.     To state a prima facie case of retaliation, Plaintiff alleges facts which establish, or tend to establish, that: (1) she engaged in protected activity; (2) thereafter, the Defendant took adverse action against her and a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection existed between the protected activity and the materially adverse action. *See, generally, Argo v. Blue Cross and Blue Shield of Kansas, Inc.,* 452 F.3d 1193, 1202 (10th Cir. 2006).

42.     To satisfy the first element of a prima facie case of retaliation, Plaintiff alleges that she engaged in protected activity.  A protected activity is one in which the individual has participated in a Charge of Discrimination under the Act or opposed a practice prohibited by the Act.  *See* Utah Code § 34A-5-102 (1) (y).

43.    Practices prohibited by the Act include discrimination, harassment, and retaliation.  "Although no magic words are required, to qualify as protected opposition[,] the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by anti-discrimination statutes]." *Hinds v. Sprint/United Management Co.,* 523 F.3d 1187, 1203 (10th Cir. 2008).

44.    Plaintiff alleges she engaged in protected activity prior to her termination on December 11, 2023, when she tried to give her side of the story as to what White was saying and doing to her because of her sex to Chief Paul.

45.    As such, Plaintiff's allegations satisfy the first element of her prima facie case of retaliation.

46.    To satisfy the second element of a prima facie case of retaliation, Plaintiff alleges that Defendant took adverse employment action against her.  An adverse employment action includes "some injury respecting ... employment terms or conditions".  *Muldrow v. City of St. Louis,* 144 S.Ct. 967, 977 (2024).  The injury respecting Plaintiff's employment terms or conditions must have left Petition are worse off, but need not have left her significantly so.  *Id.*  The terms and conditions of employment "covers more than the 'economic or tangible'".  *Id.*  A Plaintiff must only show that they were treated worse because of their protected class.  *Id.* at 974.

11

47.    Plaintiff alleges that Defendant subjected her to the following adverse actions: (1) on December 11, 2023, when Defendant did not allow her to explain what had just taken place in the office and sent her home for the rest of the day; and (2) on December 11, 2023, when Defendant terminated her employment or constructively discharged her, deeming a text she had sent to be a letter of resignation, which she never intended it to be.

48.    As to (1), Plaintiff alleges that being sent home publicly for the rest of the day, even with pay, is an adverse action, particularly when several of her coworkers were present during such action.

49.    As such, Plaintiff's allegations as to this incident satisfy the third element of her prima facie case of retaliation.

50.    As to (2), Plaintiff alleges that being terminated or constructively discharged is an adverse action.

51.    Plaintiff alleges that, because the way she was being treated on December 11, 2023 led her to believe that she was being discharged, although she was not actually told she was discharged, in that Defendant either terminated her employment or constructively discharged her.

52.    As such, Plaintiff's allegations as to the incident on December 11, 2023 satisfy the second element of her prima facie case of retaliation.

12

53.     To satisfy the third element of her prima facie case, Plaintiff alleges there was a cause and effect connection between her protected activity and the materially adverse actions.

54.     Plaintiff alleges such a connection on the basis of several facts: (1) the close temporal proximity between her attempt to give her side of the story and complain that White was treating her the way she was treating her because of her sex and her termination or constructive discharge; and (2) the effort by Defendant to treat Plaintiff's text message as a notice of resignation, which she neither intended to make or did make.

## IV.  DAMAGES

55.     Ms. Matthews alleges Defendant's actions and inactions have caused her various losses, injuries and other damages, including lost wages, lost benefits, financial stress, emotional distress and damages to her employability.

## V.  RELIEF REQUESTED

Accordingly, based on the above allegations, claims and damages, Plaintiff requests the following relief, specifically an Order and Judgment:

1.     Declaring that Defendant discriminated against Ms. Matthews on the basis of her sex, in violation of the Title VII of the Civil Rights Act;

13

2.      Awarding Ms. Matthews "make whole" relief, including awarding

Ms. Matthews the lost wages and lost benefits and/or lost wage

and benefit differential from the time Defendant terminated or

constructively discharged Ms. Matthews' employment until Ms.

Matthews secures comparable employment, or for a period of five

years, whichever occurs first;

3.      Awarding Ms. Matthews her reasonable attorney's fees and costs;

4.      Awarding Ms. Matthews such other relief as may be just and

equitable.

DATED this 29th day of April, 2026.


              /s/ David J. Holdsworth
              David J.  Holdsworth
              *Attorney for Plaintiff*

## VERIFICATION

Allison P. Matthews, being first duly sworn, upon her oath, deposes and says that she is the Plaintiff in the above-entitled action, that she helped prepare and has read the foregoing COMPLAINT and understands the contents thereof, and the statements made therein are true to the best of her knowledge and recollection.

*/s/ Allison P. Matthews*
Allison P. Matthews

SUBSCRIBED AND SWORN to before me, a Notary Public, this _____ day of _____, 20___.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:          RESIDING AT: _____

_____