Heather J. Schriever (Bar No. 9549)
SCHRIEVER LAW FIRM
174 South Main Street
Spanish Fork, UT 84660
Telephone: (801) 574-0883
Fax: (435) 294-3730
heather@schrieverlaw.com
*Attorney for American Fork City*

---

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **ALLISON P. MATTHEWS**,<br><br>Plaintiff,<br><br>vs.<br><br>**AMERICAN FORK POLICE DEPARTMENT,**<br><br>Defendant. | **MOTION TO DISMISS**<br><br>Case No. 2-26-CV-00359-TC<br><br>Honorable Tena Campbell<br><br>U.S. District Judge |

American Fork City ("American Fork City" or "City"), which Plaintiff Allison P. Matthews ("Plaintiff") did not name as a defendant, on behalf of itself and the American Fork Police Department, its non-juridical municipal department, appears in response to Plaintiff's attempted service and, without conceding that it is a party or waiving its objections to personal jurisdiction under Rule 12(b)(2), process, or service of process, moves to dismiss Plaintiff's Complaint and/or quash service pursuant to Federal Rules of

Civil Procedure 12(b)(1) 12(b)(4), 12(b)(5), 12(b)(6) and with capacity determined under Rule 17(b)(3).[1]

## RELIEF SOUGHT AND GROUNDS FOR RELIEF

Plaintiff's Complaint should be dismissed. First, Plaintiff names only the American Fork Police Department, a department of American Fork City that lacks separate legal capacity to be sued under Federal Rule of Civil Procedure 17(b)(3) and Utah law.

Second, Plaintiff's Title VII claims independently fail under Rule 12(b)(6). Although Plaintiff repeatedly characterizes the challenged actions as sex discrimination, the Complaint alleges no sex-based statement, similarly situated comparator, pattern, or other nonconclusory fact plausibly connecting those actions to Plaintiff's sex. Instead, the pleaded facts describe interpersonal conflict, Plaintiff's prior romantic relationship with the Fire Chief, disagreement over a personnel matter, a confrontation with a female coworker, and management's response. Her retaliation claim likewise fails because she does not allege that she opposed unlawful discrimination before the challenged employment actions.

Finally, Plaintiff's asserted jurisdictional bases are also defective to the extent she invokes diversity jurisdiction without alleging complete diversity and relies on 42 U.S.C. § 1981 despite alleging sex, rather than race discrimination.

## RELEVANT FACTS, AUTHORITY AND ARGUMENT

### I. The American Fork Police Department Lacks Capacity to be Sued under Rule 17(b)(3) and the Complaint Must be Dismissed.

[1] Title VII requires a plaintiff to commence a civil action within 90 days after receiving notice of the right to sue. 42 U.S.C. § 2000e-5(f)(1). Plaintiff has alleged that "all jurisdictional requirements have been met as required by Title VII of the Civil Rights Act of 1964." Compl. par.6. The present record does not establish the date Plaintiff or her counsel received a right to sue notice as required by the Act. The City therefore does not rely on the limitations issue as an independent basis for dismissal at this stage but expressly preserves the defense should the record establish that Plaintiff received notice more than 90 days before filing this action.

Plaintiff's Complaint should be dismissed because it fails to name a suable entity. *See* Fed. R. Civ. P. 12(b)(1) and (6). The capacity for non-corporate entities to be sued is determined by the law of the state where the court is located. Fed. R. Civ. P. 17(b)(3). In Utah, municipalities may sue or be sued. Utah Code § 10-1-202. No Utah statutory law provides that subdivisions of municipalities have capacity to sue or be sued, and lawsuits brought against subdivisions such as police departments should be dismissed. *See Fraga v. Sandy City Police Department*, 2025 WL 2381682, 3-4 (D. Utah, Central Division).

Here, Plaintiff sued only the American Fork Police Department, a subdivision of American Fork City, and did not name the City as a defendant. This case is therefore analogous to *Fraga*, where the court dismissed claims against the Sandy City Police Department because it was a municipal subdivision rather than a separate legal entity capable of being sued. *Fraga*, 2025 WL 2381682, at *3. Accordingly, Plaintiff's claims against the American Fork Police Department should be dismissed with prejudice. In the alternative, if the Court elects to substitute American Fork City as the proper defendant, the claims still fail for the independent reasons set forth below.[2]

## II. The Complaint Fails to State Plausible Claims for Sex Discrimination and Retaliation Under Title VII Because it Relies on Conclusory Assertions and Does not allege Facts Linking any Adverse Action to Plaintiff's Sex or to Protected Activity.

Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because it fails to state a claim for which relief can be granted. Plaintiff's Complaint does not allege sufficient facts to state a claim against the named Defendant for unlawful

[2] The City's appearance on behalf of its Police Department for purposes of seeking dismissal does not concede that the American Fork Police Department possesses a legal existence separate from the City or capacity to be sued under Rule 17(b)(3).

discrimination pursuant to Title VII. Stripped of conclusory labels, the Complaint alleges a workplace dispute and management's response, not sex-based animus. Likewise, Plaintiff's Complaint does not allege sufficient facts to state a claim against the named Defendant for retaliation pursuant to Title VII.

To withstand a Rule 12(b)(6) motion to dismiss, a complaint must allege sufficient facts, accepted as true, to state a claim that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) *quoting* Fed. R. Civ. P. 8(a)(2). When legal conclusions are included in the complaint, the reviewing court does not accept those specific allegations as true. *Iqbal*, 556 U.S. at 678. Courts will disregard conclusory statements and look only to the remaining allegations of fact to determine if sufficient facts were pleaded to state a claim. *Khalik*, 671 F.3d at 1191; *see also Twombly*, 550 U.S. at 570. Rule 12(b)(6) does not require a plaintiff to establish a prima facie case in her complaint, but courts look to the elements of the claim to determine if a plaintiff established a plausible claim. *Id.* While specific facts are not necessary, to sufficiently put a defendant on notice, some facts are required to establish a plausible claim. *Khalik*, 671 F.3d at 1193; *see also Erikson v. Pardus*, 551 U.S. 89, 93 (2007). "Accordingly, in examining a complaint under Rule 12(b)(6), [a court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik,* 671 F.3d at 1191.

**A. Plaintiff alleges no facts plausibly showing that she was treated adversely because of her sex.**

To establish a prima facie claim for discrimination under a burden-shifting framework pursuant to Title VII, a plaintiff must establish the following elements: (1) they are a member of a protected class; (2) they suffered an adverse employment action; (3) they were qualified for the position at issue; and (4) they were treated less favorably than others not of the protected class. *Khalik*, 671 F.3d at 1192; *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Here, Plaintiff does not state factual allegations in her Complaint to establish a plausible claim for discrimination. Specifically, she has not pleaded facts making it plausible that she suffered an alleged unfavorable employment action because of sex. Plaintiff has alleged the following facts in her Complaint:

- Plaintiff had a consensual romantic relationship with the Fire Chief; Compl. ¶12.
- Plaintiff privately criticized the Police Chief's personnel decision to the Fire Chief; Compl. ¶14.
- The Police Chief later said he had learned about that criticism and had "already lost trust" in Plaintiff; Compl. ¶17.
- Plaintiff became involved in a confrontation with co-worker White (a female) on December 11; Compl. ¶16.
- White accused Plaintiff of making a derogatory statement about White; Compl. ¶16.
- Management removed Plaintiff from the workplace after the confrontation with White; Comp. ¶17.
- Plaintiff sent a text afterward to a supervisor (Davis); Compl. ¶20.

- Management construed that text as a resignation. Compl. ¶21.

Plaintiff then alleged that the Police Chief sent her home "because of her sex" because "he decided she was too emotional"; and management treated her text as a resignation "because of her sex." Compl. ¶¶ 35, 36, 37, and 38. What the Complaint does not allege is that the Police Chief called Plaintiff emotional, said women were emotional, referred to Plaintiff's sex, made a sex-based remark, or otherwise articulated the supposed sex stereotype. Plaintiff pleaded the Police Chief's alleged internal reasoning as a conclusion. "Because of her sex" and "he decided she was too emotional" are not factual allegations describing what the Police Chief said or did; they are Plaintiff's characterization of why he acted. Once those conclusory allegations are disregarded, nothing in the Complaint plausibly connects the December 11 decisions to Plaintiff's sex. *See Iqbal*, 556 U.S. at 678. None of those alleged facts suggests that Plaintiff's sex motivated either employment action. The assertion that he acted "because of her sex" merely characterizes his alleged motivation and is not entitled to the presumption of truth. *See Id*. Once that conclusion is disregarded, the Complaint contains no factual allegation plausibly connecting the challenged actions to Plaintiff's sex.

Further, Plaintiff does not allege facts supporting an inference of discrimination through disparate treatment. She identifies no similarly situated male employee who engaged in comparable conduct but was treated more favorably. Indeed, the only coworker identified as participating in the December 11 confrontation—White—is also female. Plaintiff alleges White was not disciplined, Compl. ¶ 19, but that allegation does not support an inference of sex discrimination because White is a member of the same protected class. The Complaint therefore alleges neither facts suggesting sex-based

motivation nor differential treatment of a similarly situated employee outside Plaintiff's protected class. Plaintiff's conclusory assertion that the challenged actions occurred "because of her sex" cannot fill those factual gaps, and her discrimination claim should be dismissed.

### B. Title VII retaliation claim — Plaintiff fails to allege protected activity preceding, or causing, the challenged employment actions.

Plaintiff's Title VII retaliation claim should be dismissed because the Complaint does not plausibly allege that she engaged in protected activity before the challenged employment actions. Title VII prohibits retaliation against an employee because she opposed a practice made unlawful by Title VII or participated in a Title VII investigation, proceeding, or hearing. 42 U.S.C. § 2000e-3(a). A retaliation claim requires protected activity, a materially adverse action, and a causal connection between the two. *Vaughn v. Epworth Villa*, 537 F.3d 1147, 1150 (10th Cir. 2008). Protected activity includes either participation in a Title VII proceeding or opposition to conduct prohibited by Title VII. *Id.* at 1151–52.

The Complaint alleges no participation in a Title VII proceeding before the challenged actions of not allowing her to explain her side of the story, sending Plaintiff home or accepting her text resignation. Nor does it plausibly allege protected opposition. Plaintiff alleges she engaged in protected activity "when she tried to give her side of the story as to what White was saying and doing to her because of her sex to [the Police Chief]." Compl. ¶ 44. But the underlying factual allegations identify no sex-based statement or conduct by White and do not allege that Plaintiff told the Police Chief she believed White's conduct constituted sex discrimination. Instead, Plaintiff alleges a workplace confrontation with White, another female employee, and that the Police Chief

declined to hear Plaintiff's explanation before sending her home. Compl. ¶¶ 16–17. Plaintiff cannot transform an ordinary workplace dispute into protected Title VII opposition merely by later characterizing her attempted explanation as concerning conduct "because of her sex." *See Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008) (although no "magic words" are required, the employee must convey a concern that the employer engaged in conduct prohibited by antidiscrimination law).

The Complaint also fails to plausibly allege causation. An employer cannot retaliate for protected activity of which the decisionmaker was unaware. Here, Plaintiff alleges that the Police Chief refused to hear her explanation and sent her home; she does not allege that, before doing so, he knew she was attempting to complain of sex discrimination. Compl. ¶¶ 16–17, 44. Thus, even assuming Plaintiff subjectively intended to complain of discrimination, the Complaint does not allege facts showing that the Police Chief understood her attempted explanation to constitute protected Title VII opposition before taking the challenged actions. Temporal proximity cannot supply the missing causal connection where the Complaint does not plausibly allege that the decisionmaker knew of the protected activity. Accordingly, Plaintiff fails to state a plausible retaliation claim under Title VII for retaliation and the Complaint should be dismissed.

### III. The Complaint and Service Contain Additional Defects Supporting Dismissal or Quashing of Service.

In addition to failing to state a claim under Rule 12(b)(6), the Complaint improperly invokes 28 U.S.C. § 1332 and 42 U.S.C. § 1981 as bases for federal jurisdiction and was served with a summons directed to an entity that lacks capacity to be sued. These defects provide additional grounds to reject Plaintiff's asserted jurisdictional theories and quash service under Rule 12(b)(4).

### A. Sections 28 U.S.C. § 1332 and 42 U.S.C. § 1981 provide no independent basis for Plaintiff's claims.

Plaintiff alleges jurisdiction under 28 U.S.C. §§ 1331 and 1332 and 42 U.S.C. § 1981. Compl. ¶ 3. Although § 1331 supplies federal-question jurisdiction over a properly pleaded Title VII claim, neither § 1332 nor § 1981 provides an additional basis for the claims alleged here.

Section 1332 requires complete diversity of citizenship and an amount in controversy exceeding $75,000. Plaintiff alleges neither. Instead, she alleges that she resides in Utah and that named Defendant is part of a governmental entity doing business in Utah. Compl. ¶¶ 1–2. The Complaint therefore fails to plead facts establishing diversity jurisdiction.

Section 1981 is likewise inapplicable. It protects the right to make and enforce contracts free from racial discrimination, while Plaintiff alleges discrimination based solely on sex and pleads no facts suggesting racial discrimination. Accordingly, §§ 1332 and 1981 provide no independent jurisdictional or substantive basis for Plaintiff's claims.

### B. Service of process was defective.

Plaintiff served the Complaint and Summons on the American Fork City Recorder on July 20, 2026. But the Summons is directed solely to the American Fork Police Department—the only named Defendant—which, as explained above, lacks capacity to be sued under Utah law. The Summons does not name American Fork City as a defendant, and delivery of a summons directed to the American Fork Police Department does not substitute American Fork City as the defendant or effect service of process upon American Fork City as an unnamed party. Accordingly, service should be quashed for insufficient process under Rule 12(b)(4) and/or 12(b)(5).

## CONCLUSION

Plaintiff's Complaint fails for multiple, independent reasons. The American Fork Police Department lacks capacity to be sued; the Complaint fails to allege facts plausibly showing that Plaintiff suffered an adverse employment action because of her sex or because she engaged in protected Title VII activity. Plaintiff's reliance on 28 U.S.C. § 1332 and 42 U.S.C. § 1981 provides no alternative basis for her claims, and service of a summons directed solely to the American Fork Police Department did not affect service upon American Fork City. Accordingly, American Fork City respectfully requests: (1) dismissal with prejudice as to the American Fork Police Department for lack of capacity under Rule 17(b)(3); (2) in the alternative, if the Court would allow substitution of American Fork City, dismissal of the Title VII claims under Rule 12(b)(6) for failure to state a plausible claim; and (3) quashing of service under Rules 12(b)(4) and 12(b)(5).

DATED this 24th day of August, 2026.

/s/ Heather J. Schriever
Heather J. Schriever
Attorney for American Fork City

Heather J. Schriever (Bar No. 9549)
SCHRIEVER LAW FIRM
174 South Main Street
Spanish Fork, UT 84660
Telephone: (801) 574-0883
Fax: (435) 294-3730
heather@schrieverlaw.com
*Attorneys for American Fork City*

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **ALLISON P. MATTHEWS**,<br><br>Plaintiff,<br><br>vs.<br><br>**AMERICAN FORK POLICE DEPARTMENT,**<br><br>Defendant. | **CERTIFICATE OF SERVICE MOTION TO DISMISS**<br><br>Case No. 2-26-CV-00359-TC<br><br>Honorable Tena Campbell<br><br>District Judge |

Counsel for the named Defendant certifies that she served a copy of the foregoing Motion to Dismiss via email to the following:

David J. Holdsworth
David_holdsworth@hotmail.com

DATED this 24th day of August 2026.

SCHRIEVER LAW FIRM

*/s/ Heather J. Schriever*
Heather J. Schriever
*Attorney for American Fork City*

2025 WL 2381682
Only the Westlaw citation is currently available.
United States District Court, D. Utah, Central Division,
CENTRAL DIVISION.

Ebony Shanea FRAGA, Plaintiff,
v.
SANDY CITY POLICE DEPARTMENT; and
Anthony Griffiths, Defendants.

Case No. 2:24-cv-00828
|
Signed July 30, 2025

**Attorneys and Law Firms**

Ebony Shanea Fraga, Sandy, UT, Pro Se.

Danica N. Cepernich, Spencer Fane LLP, Salt Lake City, UT, Heather S. White, Jones Skelton & Hochuli Plc, South Jordan, UT, for Defendants.
Chief District Judge Robert J. Shelby

**REPORT AND RECOMMENDATION TO GRANT MOTION TO DISMISS (DOC. NO. 18) AND DISMISS ACTION WITHOUT PREJUDICE PURSUANT TO RULE 12(b)(6)**

Daphne A. Oberg United States Magistrate Judge

***1** Ebony Shanea Fraga, proceeding without an attorney, brought this action under 42 U.S.C. § 1983 against the Sandy City Police Department and Detective Anthony Griffiths.[1] Ms. Fraga claims her constitutional rights were violated when Detective Griffiths arrested her at her home without presenting a warrant.[2] The defendants have filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing (1) Sandy City Police Department is not a separate legal entity subject to suit, (2) to the extent Ms. Fraga's claims can be construed against Sandy City, she fails to allege a basis for municipal liability, (3) Detective Griffiths is entitled to qualified immunity, and (4) Ms. Fraga lacks standing to seek injunctive relief.[3]

Because Ms. Fraga's complaint fails to state a plausible claim for relief against Sandy City Police Department or Sandy City, and Detective Griffiths is entitled to qualified immunity, dismissal under Rule 12(b)(6) is appropriate. (As a result, the court need not consider Defendants' argument under Rule 12(b)(1) that Ms. Fraga lacks standing as to portions of her requested relief.) Accordingly, the undersigned[4] recommends the district judge grant the motion to dismiss and dismiss this action without prejudice under Rule 12(b)(6).

**LEGAL STANDARDS**

Rule 12(b)(1) governs motions to dismiss for lack of subject-matter jurisdiction, while Rule 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief can be granted. Here, the defendants' only jurisdictional argument is that Ms. Fraga lacks standing to seek injunctive relief[5]—an issue the court need not reach. Accordingly, Rule 12(b)(6) applies.

To avoid dismissal under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face."[6] The court accepts well-pleaded factual allegations as true and views them in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor.[7] But the court need not accept a plaintiff's conclusory allegations as true.[8] "[A] plaintiff must offer specific factual allegations to support each claim,"[9] and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[10]

***2** Because Ms. Fraga proceeds pro se (without an attorney), her filings are liberally construed and held "to a less stringent standard than formal pleadings drafted by lawyers."[11] Still, a pro se plaintiff must follow the same procedural rules as other litigants.[12] For instance, a pro se plaintiff "still has the burden of alleging sufficient facts on which a recognized legal claim could be based."[13] While courts make some allowances for a pro se plaintiff's "failure to cite proper legal authority, her confusion of various legal theories, her poor syntax and sentence construction, or her unfamiliarity with pleading requirements,"[14] the court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[15]

## BACKGROUND

Ms. Fraga filed a form civil rights complaint, checking a box indicating she is bringing claims under 42 U.S.C. § 1983.[16] She named Sandy City Police Department and Detective Griffiths (in his individual capacity) as defendants.[17]

In her complaint, Ms. Fraga alleges that on August 28, 2024, Detective Griffiths "arrived at [her] home and forcibly detained [her] without presenting a warrant."[18] She alleges that "[a]s a direct consequence of the alleged wrongful arrest and baseless child abuse allegations, the DCFS intervened, leading to the temporary removal of [her] 4-year-old son from her custody."[19] She asserts this separation caused significant emotional distress and trauma for both her and her son.[20] She further alleges she was "subjected to distressing conditions" during her detention.[21] She notes the child abuse case was later dismissed, "highlighting the unwarranted nature of both the arrest and the resulting consequences involving DCFS."[22] Finally, she alleges "the confiscation and subsequent damages to [her] cellphone led to financial loss and compromised privacy, as the device was mishandled for three weeks before being returned in a broken condition."[23]

Ms. Fraga claims her "arrest without a warrant and detention without justification" violated her Fourth Amendment rights against unlawful search and seizure.[24] She also claims her Fourteenth Amendment due process rights were violated "related to [her] arrest, detention, and the seizure and damage of [her] property."[25]

## ANALYSIS

### *A. Materials Outside the Pleadings*

As an initial matter, both parties present materials outside the pleadings in connection with their briefing on the motion to dismiss. Rule 12(d) provides that if "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56."[26] However, records of court proceedings which bear directly on a plaintiff's claims are subject to judicial notice and may be considered without converting a Rule 12(b)(6) motion to one for summary judgment.[27]

***3** Both parties filed state court records in support of their briefing. Defendants provided two arrest warrants for Ms. Fraga and dockets for the associated Utah state court cases.[28] Ms. Fraga filed (1) a juvenile court order finding the evidence did not support a finding of abuse or neglect, terminating the DCFS case, and returning Ms. Fraga's son to her custody; and (2) a district court order dismissing with prejudice charges of "abuse or neglect of a child with a disability" against Ms. Fraga.[29] Where all these state court records are subject to judicial notice and directly relate to Ms. Fraga's allegations, they are properly considered without converting the Rule 12(b)(6) motion to a summary judgment motion.

Ms. Fraga also filed other exhibits in support of her opposition:

- a medical consultation report from the DCFS case;
- police investigation records;
- photographs of her son;
- body camera video from the date of Ms. Fraga's arrest (which does not depict the arrest itself); and
- a cell phone video recording of Ms. Fraga's arrest, taken by her cousin.[30]

These documents are not attached to or referenced in the complaint itself,[31] nor are they otherwise subject to judicial notice. Therefore, they may be considered only if the motion is converted to one for summary judgment.[32]

Conversion is unnecessary because the Rule 12(b)(6) motion may properly be resolved without considering these other exhibits. The evidence from the DCFS case and criminal case (medical report, police investigation records, and photographs) are irrelevant to Ms. Fraga's specific claims in this action, which address whether Detective Griffiths acted unlawfully during her arrest. Likewise, the body camera video is irrelevant where it does not depict the arrest at issue. Finally, while the cell phone video does show the arrest, it unnecessary to consider where Defendants do not contest (for purposes of this motion) Ms. Fraga's allegations regarding what occurred during the arrest.[33] Where these exhibits are extraneous, they are not considered in resolving this motion—and the motion is not converted to a motion for summary judgment.

*B. Claims Against Sandy City Police Department*

Defendants argue the Sandy City Police Department cannot be sued because it is a subdivision of a municipality rather than a separate legal entity.[34] This is correct.

"The law of the state in which the district court sits governs the capacity of a governmental entity to sue or to be sued."[35] In Utah, municipalities may sue or be sued,[36] but there is no statutory authority permitting lawsuits against municipal subdivisions such as police departments.[37] As a result, Sandy City Police Department is not a legal entity subject to suit separate from the city.[38]

***4** Some courts have construed pro se complaints against a governmental subdivision as asserting a claim against the main governmental entity.[39] But even if Ms. Fraga's claims against the police department are liberally construed as claims against Sandy City, these claims still fail because Ms. Fraga does not allege any facts establishing municipal liability under 42 U.S.C. § 1983.

Section 1983 provides a recovery mechanism for violations of federal rights in certain circumstances.[40] "To establish a cause of action under [§] 1983, a plaintiff must allege (1) deprivation of a federal right by (2) a person acting under color of state law."[41] But "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."[42] "Instead, 'the government as an entity' may only be held liable 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.' "[43]

"There are three requirements for municipal liability under 42 U.S.C. § 1983: (1) the existence of an official policy or custom; (2) a direct causal link between the policy or custom and the constitutional injury; and (3) that the defendant established the policy with deliberate indifference to an almost inevitable constitutional injury."[44] The "municipal policy or custom" may take one of the following forms:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.[45]

Here, Ms. Fraga alleges the Sandy City Police Department set "policies and practices that allowed the alleged wrongful arrest and detention to occur without following proper legal protocols."[46] But this allegation is conclusory and insufficient to state a claim for municipal liability. A plaintiff "cannot simply allege there is a policy in place, but, rather, must plead facts that, if true, would give rise to a plausible inference that such a policy exists."[47] Ms. Fraga's allegations merely restate the elements of a municipal liability claim, without providing supporting detail. She does not identify any "formal regulation or policy statement" or allege facts from which such a policy could be inferred.[48] Nor does she allege "similar mistreatment of similarly situated individuals," as required to show the existence of an informal custom giving rise to municipal liability.[49] Likewise, Ms. Fraga's allegations do not relate to decisions made or ratified by final policymakers, and she does not allege any failure to train or supervise employees. Accordingly, Ms. Fraga fails to state a claim for municipal liability under § 1983 against Sandy City, and the claims against the Sandy City Police Department should be dismissed.

*C. Claims Against Detective Griffiths*

***5** Defendants next argue Detective Griffiths is entitled to qualified immunity. Public officials "are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time."[50] "To establish that the law was clearly established in this context, the plaintiff must point to Supreme Court or Tenth Circuit precedents [on] point, or to the clear weight of authority from other circuit courts deciding that the law was as the plaintiff maintains."[51]

"Because they turn on a fact-bound inquiry, qualified immunity defenses are typically resolved at the summary judgment stage rather than on a motion to dismiss."[52] "Asserting a qualified immunity defense via a Rule 12(b)(6)

motion subjects the defendant to a more challenging standard of review than would apply on summary judgment."[53] On a motion to dismiss, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for constitutionality."[54]

Under this standard, as explained below, Ms. Fraga fails to allege any violation of clearly established rights under the Fourth or Fourteenth Amendments. Therefore, Detective Griffiths is entitled to qualified immunity on Ms. Fraga's claims.

*1. Fourth Amendment Search and Seizure*

Ms. Fraga claims Detective Griffiths violated her Fourth Amendment rights when he "arrived at [her] home and forcibly detained [her] without *presenting* a warrant."[55] While another part of her complaint refers to her "arrest without a warrant,"[56] the state court records provided by the defendants show there were two outstanding arrest warrants for Ms. Fraga at the time of her arrest.[57] In her opposition, Ms. Fraga acknowledges these outstanding warrants existed but reiterates Detective Griffiths failed to "present" a warrant during her arrest.[58] Therefore, Ms. Fraga's claim is not based on a warrantless arrest, but rather an arrest without *presenting* a warrant.

It is well-established that under the Fourth Amendment, "absent exigent circumstances, police officers may not enter an individual's home without consent to make a warrantless routine felony arrest even if probable cause to arrest the individual exists."[59] But Ms. Fraga has not identified, and the undersigned has not found, any Supreme Court or Tenth Circuit case holding that a police officer violates the Fourth Amendment by failing to *present* a warrant before making an in-home arrest, where an outstanding warrant exists. In the context of an arrest outside the home, the Tenth Circuit has held there is no constitutional right "to be shown an arrest warrant at the time of arrest."[60] Nor is there clear weight of authority from other circuit courts supporting Ms. Fraga's position; rather, courts addressing this issue have found no constitutional requirement to present a warrant during an in-home arrest.[61] Therefore, Ms. Fraga has not shown Detective Griffiths' failure to present a warrant when he arrested her at her home was unlawful under clearly established law.

***6** Ms. Fraga also claims the seizure of her cell phone during the arrest violated the Fourth Amendment. Specifically, she alleges Detective Griffiths "seiz[ed] personal property without a valid warrant,"[62] and states her cell phone was confiscated and subsequently damaged.[63] But "the Fourth Amendment allows officers to search individuals without a warrant if that search is incident to the [individual's] lawful arrest," to "protect officers and prevent the destruction of evidence."[64] In other words, officers may seize and secure an arrestee's cell phone to prevent destruction of evidence.[65] Where Ms. Fraga has not established her arrest was unlawful, she cannot show the seizure of her phone during the arrest was unlawful under clearly established law. And while an unreasonable delay in either obtaining a search warrant or returning the property can sometimes violate the Fourth Amendment,[66] Ms. Fraga does not allege Detective Griffiths was personally responsible for the three-week delay in returning her phone.[67] Nor is it clearly established that a three-week delay is unreasonable.[68]

In sum, Ms. Fraga has not demonstrated Detective Griffiths acted unlawfully under clearly established law by arresting her without presenting a warrant or seizing her cell phone during the arrest. Accordingly, Detective Griffiths is entitled to qualified immunity on Ms. Fraga's Fourth Amendment claims.

*2. Fourteenth Amendment Due Process*

Ms. Fraga claims her Fourteenth Amendment due process rights were violated "related to [her] arrest, detention, and the seizure and damage of [her] property."[69] First, Ms. Fraga's claims related to her arrest, detention, and the seizure of her phone are governed by the Fourth Amendment, not the Fourteenth Amendment due process clause.[70] Accordingly, she fails to state a Fourteenth Amendment due process claim based on the allegations related to her arrest, detention, and the seizure of her phone.

As for Ms. Fraga's claim that her cell phone was damaged, she fails to allege Detective Griffiths' personal involvement.[71] Ms. Fraga also fails to allege Utah state remedies are inadequate to address damage to her cell phone, as required to state a Fourteenth Amendment due process claim based on deprivation of property.[72]

***7** Finally, Ms. Fraga alleges she "did not receive any medical treatment for the emotional distress [she] was experiencing" while detained.[73] Denial of medical care during pretrial detention may implicate Fourteenth Amendment due process.[74] But again, Ms. Fraga fails to

allege Detective Griffiths' personal involvement in any denial of medical care. For these reasons, Detective Griffiths is entitled to qualified immunity on Ms. Fraga's Fourteenth Amendment claims.

**RECOMMENDATION**

Because Ms. Fraga's complaint fails to state a plausible claim for relief against Sandy City Police Department or Sandy City, and Detective Griffiths is entitled to qualified immunity, the undersigned recommends the district judge grant the motion to dismiss[75] and dismiss this action without prejudice.[76] The parties have the right to object to this Report and Recommendation within fourteen days, and failure to object may be considered a waiver of objections.[77]

DATED this 30th day of July, 2025.

**All Citations**

Slip Copy, 2025 WL 2381682

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Footnotes

1 (*See* Compl., Doc. No. 1.)

2 (*See id.* at 4.)

3 (Mot. to Dismiss (Mot.), Doc. No. 18.)

4 This case is referred to the undersigned magistrate judge under 28 U.S.C. § 636(b)(1)(B). (*See* Doc. No. 12.)

5 Defendants' qualified immunity argument is properly evaluated under Rule 12(b)(6). *See, e.g.*, *Thompson v. Ragland*, 23 F.4th 1252, 1256 (10th Cir. 2022).

6 *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

7 *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013).

8 *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

9 *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

10 *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

11 *Hall*, 935 F.2d at 1110.

12 *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

13 *Jenkins v. Currier*, 514 F.3d 1030, 1032 (10th Cir. 2008) (citation modified).

14 *Hall*, 935 F.2d at 1110.

15 *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (citation omitted).

16 (Compl. 3, Doc. No. 1.)

17 (*Id.* at 2.)

18 (*Id.* at 4.)

19 (*Id.*)

20 (*Id.*)

21 (*Id.*)

22 (*Id.*)

23 (*Id.*)

24 (*Id.* at 3.)

25 (*Id.*)

26 Fed. R. Civ. P. 12(d).

27 *See* *Hodgson v. Farmington City*, 675 F. App'x 838, 840–41 (10th Cir. 2017) (unpublished) ("Facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment. This includes another court's publicly filed records concerning matters that bear directly upon the disposition of the case at hand." (citation modified)); *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("Federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those

proceedings have a direct relation to matters at issue." (citation modified)).

28 (Exs. 1–4 to Mot., Doc. Nos. 18-1–18-4.)

29 (Exs. A & B to Mot., Doc. Nos. 19-2 & 19-3.)

30 (Exs. C–G to Pl.'s Opp'n to Defs.' Mot. to Dismiss (Opp'n), Doc. Nos. 19-4–19-6 & 21.)

31 *Cf. Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) (noting a court may "consider documents referred to in the complaint" in evaluating a Rule 12(b)(6) motion "if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.").

32 *See* Fed. R. Civ. P. 12(d).

33 As noted, Ms. Fraga alleges Detective Griffiths arrested her without presenting a warrant, which the video confirms. For the first time in her opposition, Ms. Fraga states Detective Griffiths did not "mention" her outstanding warrants. (Opp'n 2, Doc. No. 19.) But the video shows Detective Griffiths told Ms. Fraga she was being arrested on multiple warrants. Thus, even if the video were considered, it would not be helpful to Ms. Fraga's position.

34 (Mot. 7–8, Doc. No. 18.)

35 *White v. Utah*, 5 F. App'x 852, 853 (10th Cir. 2001) (unpublished) (citing Fed. R. Civ. P. 17(b)).

36 Utah Code § 10-1-202.

37 *See Kojima v. Lehi City*, No. 2:13-cv-00755, 2015 WL 4276399, at *——, 2015 U.S. Dist. LEXIS 92072, at *10–11 (D. Utah July 14, 2015) (unpublished).

38 *See id.* (finding Utah law did not permit a city's policy department to be sued); *Fail v. W. Valley City*, No. 2:04-cv-01094, 2006 WL 842910, at *——, 2006 U.S. Dist. LEXIS 21698, at *6 (D. Utah Mar. 28, 2006) (unpublished) (same).

39 *See, e.g.*, *Faircloth v. Wilcox*, No. 2:24-cv-00807, 2024 WL 4872738, at *1 n.2, 2024 U.S. Dist. LEXIS 213388, at *1 n.2 (D. Utah Nov. 21, 2024) (unpublished) ("Plaintiff actually names Salt Lake County Sheriff's Office as the defendant. However, the sheriff's office is not an entity that can sue and be sued. Thus, an official-capacity claim is construed to be against the main governmental entity, Salt Lake County." (citations omitted)); *Tyler v. Utah*, No. 2:07-cv-00004, 2008 WL 5390993, at *3, 2008 U.S. Dist. LEXIS 103769, at *8 (D. Utah Dec. 23, 2008) (unpublished) ("[T]he Court construes Plaintiff's claim against the Sheriff's Office as a claim against Salt Lake County itself.").

40 *See* 42 U.S.C. § 1983; *see also Margheim v. Buljko*, 855 F.3d 1077, 1084 (10th Cir. 2017) (describing § 1983 generally).

41 *Watson v. Kansas City*, 857 F.2d 690, 694 (10th Cir. 1988).

42 *Waller*, 932 F.3d at 1283 (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

43 *Id.* (quoting *Monell*, 436 U.S. at 694, 98 S.Ct. 2018).

44 *Soto v. Bd. of Cnty. Comm'rs of Caddo Cnty.*, 748 F. App'x 790, 793–94 (10th Cir. 2018) (unpublished) (citing *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769–70 (10th Cir. 2013)).

45 *Waller*, 932 F.3d at 1283 (citation omitted).

46 (Compl. 4, Doc. No. 1.)

47 *Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1213 (D.N.M. 2015).

48 *Waller*, 932 F.3d at 1283.

49 *Hunt v. Iron Cnty.*, 372 F. Supp. 3d 1272, 1289 (D. Utah 2019) (citing *Carney v. City and Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008)).

50 *Thompson*, 23 F.4th at 1255 (citation omitted).

51 *Id.*

52 *Id.* (internal quotation marks omitted).

53 *Id.* (citation modified).

54 *Id.* (emphasis in original) (citation modified).

55 (Compl. 4, Doc. No. 1 (emphasis added).)

56 (*Id.* at 3.)

57 (*See* Ex. 1 to Mot., Doc. No. 18-1 (arrest warrant issued August 16, 2024); Ex. 2 to Mot., Doc. No. 18-2 (arrest warrant issued May 25, 2023); Exs. 3 & 4 to Mot., Doc. Nos. 18-3 & 18-4 (docket sheets showing both warrants were recalled August 29, 2024, the day after Ms. Fraga's arrest).)

58 (Opp'n 2, Doc. No. 19.)

59 *United States v. Reeves*, 524 F.3d 1161, 1165 (10th Cir. 2008) (citing *Payton v. New York*, 445 U.S. 573, 576, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)).

60 *Lewis v. Nelson*, No. 96-3400, 1997 WL 291177, at *3, 1997 U.S. App. LEXIS 12703, at *8 (10th Cir. June 2, 1997) (unpublished).

61 *See, e.g.*, *United States v. Buckner*, 717 F.2d 297, 301 (6th Cir. 1983) (finding "[t]he fact that the officers did not have the arrest warrant in hand" during a home arrest was of "no consequence" where the officers had reliable knowledge that a warrant had been issued); *United States v. Turcotte*, 558 F.2d 893, 896 (8th Cir. 1977) (finding "no merit to appellant's contention that his arrest was unlawful due to the failure of the arresting officer to serve him with a copy of the arrest warrant"); *see also* *Grund v. Aden*, No. 3:22cv4797, 2022 WL 19369239, at *7 n.8, 2022 U.S. Dist. LEXIS 240893, at *17 n.8 (N.D. Fla. Dec. 19, 2022) (unpublished) ("Plaintiff has not cited (nor has the Court located) any constitutional requirement that a police officer display a warrant before entering a home.").

62 (Compl. 4, Doc. No. 1.)

63 (*Id.*)

64 *Miller v. Bear*, 781 F. App'x 745, 752 (10th Cir. 2019) (unpublished) (citing *Arizona v. Gant*, 556 U.S. 332, 339, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009)).

65 *See* *Riley v. California*, 573 U.S. 373, 388, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014) (noting "officers could have seized and secured [the arrestees'] cell phones to prevent destruction of evidence while seeking a warrant"). Ms. Fraga does not allege her cell phone was searched, merely that it was seized and damaged.

66 *See* *United States v. Christie*, 717 F.3d 1156, 1162 (10th Cir. 2013).

67 *See* *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011) ("Personal liability under § 1983 must be based on personal involvement in the alleged constitutional violation." (citation modified)).

68 *Cf.* *Christie*, 717 F.3d at 1164 (finding a five-month delay in obtaining a search warrant could be constitutionally reasonable in some circumstances).

69 (Compl. 3, Doc. No. 1.)

70 *See* *Turner v. Houseman*, 268 F. App'x 785, 789 (10th Cir. 2008) (unpublished) ("The Fourth Amendment protects a person's liberty interests under the constitution by ensuring that any arrest or physical incarceration attendant to a criminal prosecution is reasonable. The more general procedural and substantive due process considerations of the Fourteenth Amendment are not a fallback to protect interests more specifically addressed by the Fourth Amendment in this context." (citation modified)); *see also* *Champion v. McCalister*, No. 23-6141, 2024 WL 3272239, at *3 n.5, 2024 U.S. App. LEXIS 16068, at *9 n.5 (10th Cir. July 2, 2024) (unpublished) (finding Fourteenth Amendment claims were properly dismissed where the specific allegations related to

arrest, search, and seizure implicated Fourth Amendment rights).

71 *See Brown*, 662 F.3d at 1163.

72 *See Carr v. Zwally*, 760 F. App'x 550, 555 (10th Cir. 2019) (unpublished) ("The intentional deprivation of property is not a Fourteenth Amendment violation if adequate state post-deprivation remedies are available." (citation modified)).

73 (Compl. 5, Doc. No. 1.)

74 *See Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) ("Under the Fourteenth Amendment due process clause, pretrial detainees are entitled to the degree of protection against denial of medical attention which applies to convicted inmates under the Eighth Amendment." (citation modified)).

75 (Doc. No. 18.)

76 Where Ms. Fraga is pro se and Defendants do not request dismissal with prejudice, the undersigned recommends dismissal without prejudice.

77 *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72(b).

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.